UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Darryl Beehler, D.O.,

Plaintiff,

vs. MEMORANDUM ORDER

MeritCare Medical Group, Ltd., a North Dakota Nonprofit corporation

Defendant. Civ. No. 00-2172 (JMR/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 17th day of August, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Plaintiff's Motion for an Order allowing the amendment of his Complaint, so as to include a claim of punitive damages, and for an extension of the deadline for the seeking of such an amendment.[1]

[1]The Pretrial Order in this case established a deadline of April 1, 2001, for the amendment of pleadings. As a result, the Plaintiff's Motion included a request that we extend the pleadings amendment deadline in order that this Motion could be heard on April 12, 2001. At the Hearing, the Defendant noted that it did not oppose the Plaintiff's request for an extension and, as we expressed at that time, the Motion to extend the amendment deadline would be granted.

29

FILED AUG 17 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

A Hearing on the Motion was conducted on April 12, 2001, at which time the Plaintiff appeared by Paul A. Egtvedt, Esq., and the Defendant appeared by Robert J. Udland, and Lisa E. Smith, Esqs. For reasons which follow, we deny the Plaintiff's Motion to Amend.

II. Factual and Procedural Background

This discrimination and defamation action arises from the termination of the Plaintiff's employment with the Defendant. The Plaintiff was employed as a physician at the Defendant's medical clinic, in Detroit Lakes, Minnesota, from April 1, 1997, to September 21, 1998. According to the Plaintiff, during his tenure with the clinic, he developed an excellent professional and social reputation in the area. The Plaintiff contends that, because of his success, and because of his specialization in the field of osteopathic medicine, the other physicians at the clinic became jealous of his abilities, as well as his client base. In his view, as his time at the clinic progressed, personality conflicts developed between him and the other physicians.

In support of his discrimination claim, the Plaintiff alleges that, at one point during his tenure at the clinic, the only female physician, Dr. Hurtt, demanded that another female physician be hired. Allegedly, following this demand, the clinic staff formulated a strategy to hire another female physician, while masking the discriminatory nature of that hire. The Plaintiff also alleges

that, during his tenure, the clinic's administrators were hostile towards him, because he opposed a plan to hire physician extenders, rather than family practitioners.

As asserted by the Plaintiff, the culmination of these circumstances led to the termination of his employment, which occurred on September 21, 1998. When the Plaintiff arrived for work on that day, several of the Defendant's representatives met him in order to discuss his termination. Allegedly, during the ensuing conversation, these representatives informed the Plaintiff that he was being terminated because other doctors were hostile toward him, and because he was "older." Following his departure, the Plaintiff was not allowed to speak with his patients. He asserts that several of his patients subsequently informed him that they had been advised, by the clinic's administrators, that he had "left," and that the clinic did not have any information about his departure.

As a result of his termination, the Plaintiff filed the current Complaint, which includes several claims. For the purposes of this Motion, the only relevant claims are the following:

> Count III: Violation of North Dakota Century Code section 14-02.4-01 et seq. for Age Discrimination;
>
> Count IV: Violation of North Dakota Century Code section 14-02.4-01 et seq. for Reverse Sex Discrimination; and
>
> Count V: Defamation.

By this Motion, the Plaintiff seeks to amend his Complaint so as to add a claim of punitive damages for each of the foregoing Counts.

III. Discussion

A. The North Dakota Human Rights Claims. First, the Plaintiff suggests that he should be allowed to amend his Complaint, so as to add claims for punitive damages, with respect to his discrimination claims that are predicated upon the North Dakota Human Rights Act. See, North Dakota Century Code Section 14-02.4-01 et seq. It is noteworthy, however, that the Plaintiff has chosen to selectively apply the laws of North Dakota to his discrimination claims. While the Plaintiff asserts that the application of that State's law is purely the result of the Defendant's incorporation in that State, it seems more probable that the Plaintiff prefers that law, for his discrimination claims, because, under Minnesota law, his claims would be barred by Minnesota's one-year statute of limitations, under the Minnesota Human Rights Act. See, Minnesota Statutes Section 363.06, subd. 3; Smith v. Ashland, Inc., 2001 WL 527277 at *4 (8th Cir., May 18, 2001)(MHRA provides a one-year statute of limitations for filing claims of unfair discriminatory employment practices, beginning on the date of the allegedly unfair or discriminatory act); Egerdahl v. Hibbing Community College, 72 F.3d 615, 617 (8th Cir. 1995).

Under the circumstances here, we find several factors which promote the laws of Minnesota, and not those of North Dakota, to be applicable to the Plaintiff's claims.[2] Notwithstanding our grave reservations about the propriety of applying North Dakota law, we need not decide the choice of laws issue at this juncture, as in our considered view, even under North Dakota's standard for the amendment of a Complaint so as to add a claim for punitive damages, the Plaintiff is not entitled to such an amendment.[3]

1. Standard of Review. Under Section 32-03.2-11 of the North Dakota Century Code, a Plaintiff must raise a claim for punitive damages by amending his pleadings, rather than in the initial Complaint. See, Nereson v. Zurich Insurance Co., 1992 WL 212233 *1 (D.N.D. Aug. 20, 1992). In support of the proposed amendment, the

---

[2]Among the factors which suggest that Minnesota Law applies to this case, are the following: (1) the termination of the Plaintiff's employment occurred in Minnesota; (2) the Plaintiff is a resident of the State of Minnesota; (3) the Defendant was doing business in the State of Minnesota at the time of the termination of the Plaintiff's employment; and, (4) the entirety of the Plaintiff's working relationship with the Defendant occurred in the State of Minnesota.

[3]As noted by the Defendant, because the North Dakota Supreme Court has never determined whether punitive damages are available under the North Dakota Human Rights Act, it is unclear whether the Plaintiff's Motion should be denied on that basis alone. However, we benignly ignore that issue, as the Plaintiff is plainly not entitled to amend his Complaint to assert a punitive damage claim under the standard applied by the North Dakota Courts.

Motion to Amend "must state a legal basis for a punitive damages award and be accompanied by affidavits establishing a factual basis for the proposed claim." Id. Further, the Court "may allow the amendment only if it finds 'prima facie evidence' supporting the claim." Id. As explained by the Court in Nereson:

> Section 32-03.2-11 indicates that a court or jury may award punitive damages against a defendant if the defendant is guilty by clear and convincing evidence of oppression, fraud or malice. Defendants argue that this clear and convincing standard is the applicable burden that plaintiff must carry before the court may allow the amendment to the complaint. The court finds that the statute's clear and convincing standard is the quantum of proof required before the factfinder may award punitive damages. The quantum of proof for leave to amend the complaint merely requires that the plaintiff submit prima facie evidence to support the claim. Prima facie evidence is "sufficient evidence upon which a party would be entitled to recover, providing his opponent produced no further testimony." Schnoor v. Meinecke, 40 N.W.2d 803, 808 (N.D. 1950).
>
> Therefore, the court must look at the evidence presented by the plaintiff and determine if a reasonable jury could find the defendant guilty of oppression, fraud or malice. The court does not need to be clearly convinced that the plaintiff will prevail on the claim, merely that a reasonable jury could be clearly convinced by the evidence. To require clear and convincing proof at this stage would usurp the factfinding province of the jury and undermine plaintiff's right to jury trial on the punitive damages claim.

Lowell v. Zurich Ins. Co., supra at *2; c.f., Habiger v. City of Fargo, 905 F. Supp. 709, 724-725 (D.N.D. 1995)(Using "reasonable

jury" standard to judge propriety of amendment for punitive damages in the context of a section 1983 claim).

As would be the case in Minnesota, punitive damages are allowed, in North Dakota, "in addition to the actual damages * * * for the sake of example and by way of punishing the defendant." Puppe by Puppe v. A.C. and S., Inc., 733 F. Supp. 1355, 1357 (D.N.D. 1990). "Proponents of punitive damages believe that, by giving plaintiffs damages over and above the full compensation for their injuries, defendants are punished, taught not to repeat culpable behavior, and others are deterred from following defendant's dubious example." Id., citing W. Prosser, The Law of Torts §2, p. 9 (4th Ed. 1971).

2. Legal Analysis. As provided in Section 32-03.2-11 of the North Dakota Century Code, a Court or Jury may award punitive damages against a defendant, if the defendant is guilty, by clear and convincing evidence, of oppression, fraud, or malice. See, Nereson v. Zurich Insurance Co., supra at *2; Ehrman v. Feist, 568 N.W.2d 747, 754 (N.D. 1997); Veneklase v. City of Fargo, 904 F. Supp. 1038, 1060 (D.N.D. 1995).[4] "A finding of oppression, fraud,

---

[4]Section 32-03.2-11, North Dakota Century Code, reads as follows:

> When court or jury may give exemplary damages. In any action for the breach of an obligation not arising from contract, when the defendant
> (continued...)

or malice is a prerequisite to an award of punitive damages." Ehrman v. Feist, supra at 754, citing Continental Cas. Co. v. Kinsey, 499 N.W.2d 574, 579 (N.D. 1993). "The terms 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law * * * [while] the term 'oppression' is defined as an act of cruelty, severity, unlawful exaction, or excessive use of authority." Ingalls v. Paul Revere Life Ins. Group, 561 N.W.2d 273, 284 (N.D. 1997)(citing Trial Court's instruction with approval).

---

[4](...continued)

has been guilty by clear and convincing evidence of oppression, fraud, or malice, actual or presumed, the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant. Upon commencement of the action, the complaint may not seek exemplary damages. After filing the suit, a party may make a motion to amend the pleadings to claim exemplary damages. The motion must allege an applicable legal basis for awarding exemplary damages and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim exemplary damages. For purposes of tolling the statute of limitations, pleadings amended under this section relate back to the time the action was commenced.

Despite this extremely high threshold, the Plaintiff has offered very little evidence of malice, fraud, or oppression. Here, as support for his Motion to Amend, the Plaintiff has proffered the following evidence:

> (1) During his time at the clinic, a female doctor threatened to leave unless another female doctor was hired.
>
> (2) Following this threat, meetings were held, exclusive of the Plaintiff, during which the clinic staff discussed how to hire another female without making it obvious that the clinic was engaged in reverse sex discrimination.
>
> (3) Following the termination of the Plaintiff's employment, another female physician was hired.
>
> (4) At the time of the termination of the Plaintiff's employment, he was told by Dr. Robert Montgomery, that part of the reason for his termination was because he was "older."

See, Declaration of Dr. Darryl A. Beehler, at ¶¶ 8-14.

We find this evidence wholly insufficient to satisfy the Plaintiff's prima facie burden to show his entitlement to punitive damages. The stray remarks made by clinic staff members, subsequent to the termination of the Plaintiff's employment, and the Defendant's subsequent decision to hire a female physician, are not probative on the issue whether the Defendant's actions were conducted with "malice," and are insufficient to constitute "oppres-

sion."[5] These allegations do not reflect any intent, at a time prior to the termination of the Plaintiff's employment, on the Defendant's part, to vex, annoy, or injure the Plaintiff, or to commit a wrongful act. As a result, these alleged comments are insufficient to demonstrate that the Defendant's actions were cruel, severe, or excessive. Rather, the evidence, at best, may be

---

[5]We note that Dr. Montgomery has denied that he ever informed the Plaintiff that he was fired for being "older." See, Affidavit of Robert Montgomery, at III. Also, Paulette Amundson, who is the Executive Partner for Regional Health Services, avers that she was present at the meeting between the Plaintiff and Dr. Montgomery, and she also denies that Montgomery informed the Plaintiff that he was fired for being "older." See, Affidavit of Paulette Amundson, at VI.

Even without this evidence, however, no reasonable Jury could conclude that Dr. Montgomery's alleged statement demonstrated malice, or oppression, on the part of the Defendant. The Supreme Court has carefully distinguished between "[c]omments which demonstrate a 'discriminatory animus in the decisional process' or those uttered by individuals closely involved in employment decisions," from "'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process.'" See, Rivers-Frison v. Southeast Missouri Community Treatment Center, 133 F.3d 616, 619 (8th Cir. 1998), citing Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991), quoting, in turn, Price Waterhouse v. Hopkins, 490 U.S. 228, 278 (1989). Further, our Court of Appeals has clearly held that stray remarks are insufficient, in and of themselves, to support a claim for discrimination. See, Clearwater v. Independent School Dist. No. 166, 231 F.3d 1122, 1126 (8th Cir. 1999). As such, because stray remarks are not sufficient to support a claim of discrimination, are not adequate to demonstrate that discrimination was the product of an evil motive, or intent. We are aware of no decision in North Dakota, and the Plaintiff draws none to our attention, in which stray remarks are entitled to greater deference than accorded under Federal law.

germane to a determination of whether the Defendant's decision, to terminate the Plaintiff's employment, was the product of illegal age or sex discrimination.

The only evidence that is probative of whether the Defendant's actions were malicious, or oppressive, is the Plaintiff's accusation that, prior to the termination of his employment, a meeting was conducted, at which he was not present, but during which the clinic staff decided to engage in sexually discriminatory employment practices. This accusation is pertinent to the presence of malice, among clinic staff, as it intimates, albeit inferentially, that they had knowledge that their intended behavior was wrongful and, therefore, that they intended to commit a wrongful act. However, since the Plaintiff's assertions, as the statements that were supposedly made at that meeting are hearsay, they cannot be considered to be either clear or convincing, so as to support the Plaintiff's prima facie burden.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Federal Rules of Evidence. Hearsay statements are inadmissible, except as specifically provided by the Federal Rules of Evidence, rules prescribed by the Supreme Court, or an Act of Congress. See, Rule 802, Federal Rules of Evidence. Here, the Plaintiff's declaration,

in support of his Motion to Amend, states that "discussions were held among the physicians and administrators at MeritCare, exclusive of myself, concerning how a female physician could be hired without anyone being able to determine that the hiring was the result of sex discrimination * * * [and] [d]uring these meetings, it was noted that the hiring of a female physician would have to be done with subtlety." Id. at ¶¶ 9-10.

Being hearsay, this recreation of an out-of-court statement cannot be considered reliable evidence, as the Plaintiff has failed to identify the individual who made the allegedly discriminatory statements, and he has failed to reveal how he became aware that the statements were actually made.[6] Since this hearsay is being offered for the truth of the matter asserted, i.e., to demonstrate the discriminatory and, therefore, malicious motive of the Defendant, the evidence is incompetent for that purpose. See, Rule 801(c), Federal Rules of Evidence. Notably, the Plaintiff offers no exception to the hearsay rule which would immunize this evidence for exclusion at Trial.

[6]We note that, because this conversation did not involve the motives behind the termination of the Plaintiff's employment, it does little to establish whether his termination was malicious, or oppressive. Nevertheless, because a reasonable Jury could infer that the Defendant's decision to terminate the Plaintiff's employment was related to its desire to hire another female physician, we consider the probative weight of this evidence.

In sum, the Plaintiff's mere conclusory assertions of a discriminatory motive, on the Defendant's part, are insufficient to warrant leave to plead a claim of punitive damages under the circumstances presented here. Quite simply, the Plaintiff has made no showing that the Defendant acted in a malicious or oppressive manner. Therefore, the Plaintiff's Motion to Amend his Complaint, so as to assert a claim for punitive damages, under the North Dakota Human Rights Act, is denied.

B. The Minnesota Defamation Claim. In addition to seeking punitive damages under the North Dakota Human Rights Act, the Plaintiff requests that he be allowed to amend his Complaint in order to add claims for punitive damages, with respect to his defamation claim, which arises under Minnesota law.

1. Standard of Review. In the Federal Courts of this District, the pleading of punitive damages claims, which arise under Minnesota law, must generally conform to the requirements of Minnesota Statutes Sections 549.191 and 549.20. See, Olson v. Snap Products, Inc., 29 F. Supp.2d 1027 (D. Minn. 1998), quoting Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994); see also, Bunker v. Meshbesher, 147 F.3d 691, 696 (8th Cir. 1998). Under Section 549.191, a plaintiff who seeks to assert a punitive damage claim must first obtain leave of the Court to do so, based upon a prima facie showing of entitlement. Ulrich v. City of Crosby,

supra at 867. A plaintiff need not demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages.[7] Olson v. Snap Products, Inc., supra at 1034. As the Statute provides, a Court "shall grant a Motion to amend to allege punitive damages if it finds prima facie evidence in support of the motion." Bunker v. Meshbesher, supra at 696 [quotations omitted].

In order to establish a claim for punitive damages, a party must show, by clear and convincing evidence, that the Defendant acted with a "deliberate disregard for the rights or safety of others." Minnesota Statutes Section 549.20, Subdivision 1(a). The pivotal term "deliberate disregard" has been statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the Defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

---

[7]Under the strictures of Section 549.191, "the Court reviews the evidence in support of a Motion to Amend as the Court would review a Motion for a Directed Verdict * * *." Ulrich v. City of Crosby, supra at 867; see also, Swanlund v. Shimano Indus., Corp., Ltd., 495 N.W.2d 151, 154 (Minn.App. 1990). Thus, as we have observed in prior cases, in reaching such a determination, the Court makes no credibility rulings, and does not consider any challenge, by cross-examination or otherwise, to the plaintiff's proof. Id.

> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minnesota Statutes Section 549.20, Subdivision 1(b).

In substance, "[a] defendant operates with 'deliberate disregard' by acting with intent or indifference to threaten the rights or safety of others." Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994), cert. denied, 513 U.S. 1198 (1995). As such, "[a] mere showing of negligence is not sufficient" to sustain a claim of punitive damages. Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 268 (Minn. 1992).

In addition, under the Section 549.20 standard, the Court "is required to search for evidence which is 'clear and convincing.'" Olson v. Snap Products, Inc., supra at 1036. "To be 'clear and convincing,' there must be 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'" Ulrich v. City of Crosby, supra at 868, quoting Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978). Ultimately, the Court's independent search for clear and convincing, prima facie evidence, that the defendant acted with a deliberate disregard for the rights or safety of others, requires the Court to do more than "rubber stamp" the allegations in the Motion papers. Id.; Swanlund v. Shimano Indus.

Corp., Ltd., 459 N.W.2d 151, 154 (Minn.App. 1990), rev. denied (Minn., Oct. 5, 1990).

2. Legal Analysis. The Plaintiff contends that he is entitled to amend his Complaint, in order to assert a claim for punitive damages with respect to the Defendant's assertedly defamatory statements. The evidence that the Plaintiff has introduced, in support of this aspect of his Motion, can best be characterized as sparse, particularly as it relates to the purported "deliberate disregard" of the Defendant, when we properly view that evidence in the prism of the clear and convincing evidentiary standard. The critical shortcoming of the Plaintiff's submissions, when proffered as prima facie evidence, is that it fails to clearly, and convincingly, demonstrate that the Defendant was guilty of anything more than mere negligence.

Since punitive damages "are intended to punish a defendant, or to make an example of a defendant's wrongdoing," the focus of our scrutiny must remain cast on whether the "defendant's conduct reaches a threshold level of culpability." Ulrich v. City of Crosby, supra at 867. The mere existence of negligence, or even of gross negligence, does not rise to a such a level of condemnable conduct as to warrant an entitlement to plead a punitive damages claim. See, Ulrich v. City of Crosby, supra at 868, citing Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 381 (Minn. 1990); Herbst v.

Northern States Power Co., 432 N.W.2d 463, 496 (Minn.App. 1988); State by Woyke v. Tonka Corp., 420 N.W.2d 624, 629 (Minn.App. 1988); and Utecht v. Shopko Dept. Store, 324 N.W.2d 652, 654 (Minn. 1982).

We recognize, however, that "[i]t is * * * firmly established in Minnesota that punitive damages can be awarded in cases of defamation per se without proof of actual damage to the plaintiff." Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 259 (Minn. 1980), citing Anderson v. Kammeier, 262 N.W.2d 366, 372 (Minn. 1977); Loftsgaarden v. Reiling, 126 N.W.2d 154, (Minn. 1964) cert. denied, 379 U.S. 854 (1965). To establish a claim for defamation, the Plaintiff must establish each of the following elements: (1) a false statement; (2) communication of the false statement to some-one other than the plaintiff; and (3) that the false statement would tend to harm the plaintiff's reputation or lower him in the estimation of the community. Ferrell v. Cross, 557 N.W.2d 560, 565 (Minn. 1997); Richie v. Paramount Pictures Corp., 544 N.W.2d 21, 25 (Minn. 1996); Bersch v. Rgnonti & Associates, Inc., 584 N.W.2d 783 (Minn.App. 1998); Thompson v. Olsten Kimberly Qualitycare, Inc., 33 F. Supp.2d 806, 815 (D. Minn. 1999). When a defendant makes defam-atory statements that affect a person's business, trade, or profes-sion, the statements are defamatory per se, and are actionable without proof of actual damages. See, e.g., Stuempges v. Parke,

Davis & Co., supra at 255; Lee v. Metropolitan Airport Com'n, 428 N.W.2d 815, 819 (Minn. App. 1988); Ulrich v. City of Crosby, 848 F. Supp. 861, 870 (D. Minn. 1994); Moss v. Advance Circuits, Inc., 981 F. Supp. 1239, 1251 (D. Minn. 1997).

The Plaintiff has succinctly identified the specific grounds, upon which he alleges a claim of defamation, as follows:

> When patients of plaintiff, after plaintiff's termination, asked for appointments with plaintiff, or asked where plaintiff was, these patients were told by clinic staff that: "Dr. Beehler left. We are not able to divulge any further information."

Plaintiff's Memorandum, at 18, citing Beehler Dec., at ¶ 32. This recitation, concerning the communications between the clinic's staff, and individuals who were attempting to obtain information about the Plaintiff's whereabouts, fails to establish a prima facie right to plead a punitive damage claim. First, there is nothing untrue and, therefore, defamatory, about the statement that the Plaintiff "left." Although the Plaintiff argues that the Plaintiff was "forced to leave," he has failed to cite any authority to support the notion, that the phrase "he left," denotes an involuntary departure. Indeed, commonsense would not impute any such meaning to the common understanding of the terms employed.

We recognize that "determining whether defamation has occurred is * * * complicated by the fact that the tort is based on communication of a statement that can be interpreted by the declarant

to have one meaning but to have quite a different one to the recipient." Bolton v. Department of Human Services, 540 N.W.2d 523, 526 (Minn. 1995). Further, we accept that words, taken by themselves, may have an innocent meaning, while conveying a defamatory connotation in the context of a given circumstance, at least to those who are aware of that circumstance. See, Bauer v. State, 1996 WL 601647 at *6 (Minn.App. Dec. 17, 1996)(citations omitted). Nevertheless, here, by telling patients that the Plaintiff "left," the clinic's staff left no room for misinterpretation by the recipients of that communication. Squarely put, the Plaintiff "left" the clinic, and there is nothing inaccurate, let alone defamatory, in that recounting of historic fact. This statement, therefore, cannot properly serve as the basis for the Plaintiff's proposed amendment. See, Rule 15(a), Federal Rules of Civil Procedure; Foman v. Davis, 371 U.S. 178, 182 (1962)(Stating that futility of the amendment provides a basis for denying leave to amend); see also, ARE Sikeston v. Weslock National, Inc., 120 F.3d 820, 832 (8th Cir. 1997); Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

Therefore, what remains to consider is the statement that the Defendant was not able to divulge information about the Plaintiff's whereabouts. Even if untrue, it is difficult to conceive how such a statement, without more, would connote that the Defendant delib-

erately disregarded the rights of the Plaintiff, or that it recklessly sought to impugn his reputation, or to lower his esteem in the community. More importantly, the Plaintiff has not demonstrated, either factually, or by citation to legal authority, that the clinic had an obligation to obtain a forwarding address for the Plaintiff, or that the failure to disclose that address has any defamatory effect. Therefore, finding no clear and convincing evidence, that the statements the Plaintiff offers in support of his Motion to Amend have any defamatory tone, let alone effect, we deny his Motion to Amend his Complaint so as to append a punitive damage claim to his action for defamation.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion to allow an amendment to the Pretrial Order [Docket No. 9] so as to permit a late filing of a Motion to Amend is GRANTED.

2. That the Plaintiff's Motion for an Order allowing an Amendment to his Complaint so to Include a Claim for Punitive Damages [Docket No. 9] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500